Peter I. Bersin, Esq., SBN 65202
LAW OFFICES OF PETER I. BERSIN
9454 Wilshire Boulevard, Suite 500
Beverly Hills, California 90212-2982
Telephone:  (310) 858-6935
Fax No.:    (310) 275-6647
peterbersin@sbcglobal.net

Philip H. Dunn, Esq., SBN 76291
DUNN & ASSOCIATES
854 Pico Boulevard
Santa Monica, California 90405
Telephone: (310) 393-2769
Fax No.:   (310) 392-5286
DUNNSLAW@CS.COM

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIRK TUEY, | CASE NO.: |
| Plaintiff, | **COMPLAINT FOR NEGLIGENCE** |
| v. | **DEMAND FOR JURY TRIAL** |
| MAMMOTH MOUNTAIN SKI AREA; INTRAWEST CORPORATION; STARWOOD CAPITAL GROUP GLOBAL, LLC | |
| Defendants. | |

Plaintiff, KIRK TUEY, complains of Defendants and alleges and avers the following:

## I.

## JURISDICTION

1. This court has subject matter jurisdiction over this action pursuant to 28 USCA § 1332(a)(3), (diverse citizenship).

//

//

1

COMPLAINT FOR NEGLIGENCE

## II.

## VENUE

2. This court has venue pursuant to 28 U.S.C. § 1391.

## III.

## PARTIES

3. Plaintiff, KIRK TUEY, is a citizen of, and resident of the State of Nevada, with his principal place of residence in Las Vegas, Nevada.

4. Defendant, MAMMOTH MOUNTAIN SKI AREA (hereinafter referred to as "MAMMOTH") was, and is now, a corporation duly organized and existing under the laws of the State of California with its principal place of business in Bishop, California.

5. Defendants, INTRAWEST CORPORATION (hereinafter referred to as "INTRAWEST") was, and is now, a corporation duly organized and existing under the laws of the foreign country of Canada with its principal place of business located in Vancouver, Canada. At all times herein mentioned, INTRAWEST had an ownership interest in Co-Defendant MAMMOTH.

6. Defendant STARWOOD CAPITAL GROUP GLOBAL, LLC (hereinafter referred to as "STARWOOD CAPITAL") was, and is now, a corporation duly organized and existing under the laws of the State of Connecticut with its principal place of business in Greenwich, Connecticut. At all times herein mentioned STARWOOD CAPITAL had an ownership interest in Co-Defendant MAMMOTH.

7. This action is of a civil nature involving a sum in excess of $75,000. Every issue of law and fact is wholly between citizens of different states.

## IV.

**FIRST CAUSE OF ACTION FOR NEGLIGENCE AGAINST DEFENDANTS, MAMMOTH, INTRAWEST, STAR CAPITAL, AND EACH OF THEM**

8. At all times herein mentioned MAMMOTH was and still is, one of the largest ski resorts in the United States and has been in operation since 1950.

9. In addition to a wide variety of slopes that service skiers of all levels including

1  beginners, intermediates, and experts, MAMMOTH also has seven (7) separate freestyle terrain parks.

10. Within some of the freestyle terrain parks, MAMMOTH constructed what is commonly known in the ski business as a halfpipe run.

11. A halfpipe is constructed into the mountain using earth movers and other heavy equipment. A halfpipe will extend various lengths, such as the Super-Duper Pipe at MAMMOTH which is approximately 600 feet in length. The halfpipe will typically have side walls running along both sides of the run which can be as high as 15 to 20 feet.

12. On February 17, 2006, MAMMOTH had two separate halfpipes located within an area known as Unbound Main. The halfpipe named Super Pipe was not a natural terrain variation and it potentially increased the inherent risks associated with skiing because if someone unknowingly skied into Super Pipe, they would experience a drop off of approximately 18 feet which would be dangerous and potentially fatal. The Super Pipe was approximately 375 feet long and 75 feet wide.

13. At all times herein mentioned, Defendants, MAMMOTH, INTRAWEST, STARWOOD CAPITAL, and each of them, owned, possessed, leased, operated, inspected, managed, monitored, set-up equipment on, guarded, or otherwise were responsible for controlling those certain premises where the Super Pipe at MAMMOTH MOUNTAIN SKI AREA was located.

14. At all times herein mentioned, Defendants, MAMMOTH, INTRAWEST, STARWOOD CAPITAL, and each of them, were required to maintain the MAMMOTH MOUNTAIN SKI AREA including but not limited to, Unbound Main and the Super Pipe, in a reasonably safe condition or to warn as to dangerous conditions or activities that were known to exist or which they should have known to exist. The Defendants, and each of them, were in the business of owning, possessing, designing, installing, managing, inspecting, maintaining, controlling, hiring, supervising, training, instructing, and otherwise operating the MAMMOTH MOUNTAIN SKI AREA including the Unbound Terrain Park for the use, convenience and protection of patrons, invitees and others who came upon said premises at the invitation or with

1  the permission of Defendants, and each of them.

2  15.  On the morning of February 17, 2006, Plaintiff, KIRK TUEY, rode up the chairlift with a companion, and started to ski down into the Unbound Main Terrain Park. The weather conditions that morning included an overcast sky with snow flurries. The lighting for the skiers is what is commonly referred to as flat light making it more difficult to see variations in ski terrain.

16.  When Plaintiff and his companion were about halfway down, they both decided to traverse left over to a run called Broadway with the idea of going up the chairlift called Broadway Express.

17.  Both Plaintiff and his companion believed they could easily get to Broadway by simply traversing to their left toward what looked to them, like an open, unobstructed path to Broadway.

18.  Both Plaintiff and his companion traversed left going between towers which hold up the cables and chairs of the chairlift, passed underneath the chairlift, and then suddenly and unexpectedly, both skiers launched off the slope into the Super Pipe which dropped down approximately 18 feet.

19.  Neither Plaintiff nor his companion, saw the drop-off into this halfpipe prior to skiing into it.

20.  The Plaintiff fell onto his head and although he was wearing a helmet, he was knocked unconscious. Plaintiff's companion fell backward and was not seriously injured.

21.  At the time Plaintiff and his ski companion traversed across Unbound Main toward Broadway, the halfpipe drop-off was not an open and obvious condition. Rather, because of the flat light and weather conditions, it was not discernable from the angle of Plaintiff's approach.

22.  At the time Plaintiff and his companion skied into the Super Pipe drop-off, MAMMOTH, INTRAWEST, STARWOOD CAPITAL, and each of them, knew or should have known, the Super Pipe constituted a potential danger to skiers and snow boarders who could enter this area not knowing that the halfpipe was there.

23.  At the time Plaintiff and his companion skied into the Super Pipe on February 17,

1  2006, Defendants, MAMMOTH, INTRAWEST, STARWOOD CAPITAL, and each of them,
2  knew or should have known, that in order to protect guests from skiing into the lower Super Pipe
3  off Unbound Main, it was necessary to rope-off the length of this halfpipe so skiers and snow
4  boarders could not enter it from the adjacent slope that bordered it.

5      24.  At the time Plaintiff and his companion skied into the Super Pipe on February 17,
6  2006, Defendants, MAMMOTH, INTRAWEST, STARWOOD CAPITAL, and each of them,
7  knew or should have known, that it was also necessary to flag the borders of the Super Pipe to
8  warn skiers and snow boarders, that the halfpipe was there.

9      25.  On or before February 17, 2006, Defendants, MAMMOTH, INTRAWEST,
10 STARWOOD CAPITAL, and each of them, recognized that they had a duty to properly
11 maintain, inspect, manage, supervise, and control the Unbound Terrain Park so as to prevent
12 skiers and snow boarders from unknowingly skiing or snow boarding off the slope and into the
13 halfpipe drop-off from the adjacent Unbound Main slope.

14     26.  On the morning of February 17, 2006, Defendants, MAMMOTH, INTRAWEST,
15 STARWOOD CAPITAL, and each of them, so negligently, carelessly and recklessly owned,
16 operated, possessed, leased, set-up equipment on, monitored, guarded, maintained, managed,
17 supervised, inspected, and controlled the Unbound Terrain Park, so as to allow skiers and/or
18 snow boarders, to enter the drop-off area of the Super Pipe from a section or area of the adjacent
19 Unbound Main Park slope and ski into it.

20     27.  On February 17, 2006, Defendants, MAMMOTH, INTRAWEST, STARWOOD
21 CAPITAL, and each of them, negligently, carelessly and recklessly failed to rope-off access to
22 the Super Pipe high enough up the Unbound Main slope.

23     28.  On February 17, 2006, instead of starting the rope at the designated entrance to the
24 Super Pipe, Defendants, and each of them, left a long gap and started the rope too far down the
25 slope and too far away from the Super Pipe. This gap is the area where Plaintiff and his
26 companion traversed through on their way to Broadway. Not only was there no rope in the area,
27 but no poles with bright colored flags were in place to warn skiers of the borders of the upper
28 section of the Super Pipe. The rope that was placed to presumably prevent skiers from skiing

into the Super Pipe lower down the Unbound Main slope, was not visible to skiers coming from the upper section of Unbound Main, and this rope should have had ribbon ties which would have highlighted the rope.

29.  On or before February 17, 2006, Defendants, MAMMOTH, INTRAWEST, STARWOOD CAPITAL, and each of them, negligently, carelessly and recklessly failed to take other necessary action, to prevent skiers from inadvertently skiing into the Super Pipe from the adjacent Unbound Main ski slope.

30.  As a direct and proximate result of Defendants, MAMMOTH, INTRAWEST, STARWOOD CAPITAL, and each of their, breach of its duties of care as heretofore described, Plaintiff, KIRK TUEY, has suffered severe and permanent injuries, including but not limited to, brain damage.

31.  As a further direct and proximate result of the negligence of Defendants, MAMMOTH, INTRAWEST, STARWOOD CAPITAL, and each of them, Plaintiff has incurred medical and hospital expenses in excess of $100,000 and will incur future medical expenses in an amount according to proof at the time of trial.

32.  As a further direct and proximate result of the negligence of Defendants, MAMMOTH, INTRAWEST, STARWOOD CAPITAL, and each of them, Plaintiff has been unable to work and has incurred a past loss of earnings in excess of $100,000. In addition, Plaintiff has suffered a future loss of earning and earning capacity in an amount according to proof at the time of trial.

33.  As a further direct and proximate result of the negligence of Defendants, MAMMOTH, INTRAWEST, STARWOOD CAPITAL, and each of them, Plaintiff has experienced pain and suffering and severe mental, physical and emotional distress all to his general damage in an amount according to proof at the time of trial.

WHEREFORE, Plaintiff, KIRK TUEY, prays for damages against Defendants, MAMMOTH MOUNTAIN SKI AREA; INTRAWEST CORPORATION and STARWOOD CAPITAL GROUP GLOBAL, LLC and each of them as follows:

1.  For general damages, according to proof, which amount is in excess of $100,000;

2. For medical and related expenses, according to proof;

3. For loss of earnings and earning capacity, according to proof;

4. For Plaintiff's other economic losses, according to proof;

5. For Plaintiff's costs of suit incurred herein; and

6. For such other and further relief as the court deems just and proper.

DATED:  November 5, 2007

LAW OFFICE OF PETER I. BERSIN
DUNN & ASSOCIATES

By: _____
PETER I. BERSIN

By: _____
PHILIP H. DUNN
Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

DATED:  November 5, 2007

LAW OFFICE OF PETER I. BERSIN
DUNN & ASSOCIATES

By: _____
PETER I. BERSIN

By: _____
PHILIP H. DUNN
Attorneys for Plaintiff

COMPLAINT FOR NEGLIGENCE